IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JEFFREY E. EBERLE,** *et al.*,

      **Plaintiffs,**

  vs.                        **Civil Action 2:03-CV-272**
                                    **Magistrate Judge King**

**REGINALD A. WILKINSON,**
*et al.*,

      **Defendants.**

## OPINION AND ORDER

Plaintiffs, five individuals currently or formerly in the custody of the State of Ohio, bring this civil rights action under 42 U.S.C. §1983 alleging various violations of their constitutional rights.[1] Plaintiffs also assert claims under the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §2000cc-1 ["RLUIPA"]. With the consent of the parties, 28 U.S.C. §636(c), this matter is now before the Court on the parties' various motions.

Because the United States Supreme Court has held that RLUIPA does not violate the Establishment Clause of the First Amendment to the United States Constitution, *Cutter v. Wilkinson,* 544 U.S. 709 (2005), plaintiffs' motion to stay this action pending resolution of that issue, Doc. No. 89, is **DENIED** as moot.

---

[1] One of the original plaintiffs, David Griffith, has since voluntarily dismissed his claims.  Doc. No. 125.

**DISCOVERY-RELATED MOTIONS**

*Motion to Compel Response to Interrogatories by Defendant Chenoweth*, Doc. No. 81.

Plaintiff Weisheit propounded interrogatories to defendant Chenoweth, seeking information regarding Rules Infraction Board ["RIB"] proceedings allegedly instituted against this plaintiff in July 2004. Plaintiff Weisheit concedes, in his motion to compel, that "the incident inquired into is not a claim in this lawsuit," *Plaintiff Weisheit's Motion for Order Compelling Answers to Interrogatories from Defendant Chenoweth,* at 3, but nevertheless claims that the requested discovery is reasonably calculated to lead to the discovery of admissible evidence within the meaning of F.R. Civ. P. 26(b)(1).

The Court agrees with defendants that the discovery sought by this motion falls outside the ambit of discoverable information. This motion, Doc. No. 81, is therefore **DENIED.**

*Plaintiffs' Third Motion for Order Compelling Discovery,* Doc. No. 83.

In this motion, plaintiffs seek the production of a variety of documents.

   a. Copies of all RIB hearings tapes.

Each of the plaintiffs assert claims arising out of RIB proceedings against them individually. Plaintiffs seek production, to all plaintiffs, of copies of audiotapes relating to all the RIB proceedings at issue in this case, asking that each plaintiff be provided a copy of each tape. In response, defendants note that each plaintiff was provided a copy of tapes relating to their own RIB hearings, and represent that each plaintiff was afforded an opportunity to review the audiotapes of other

plaintiffs' proceedings. *See* Exhibits C-H, attached to *Response in Opposition by Defendants to Plaintiffs' Third Motion for Order to Compel Discovery*.

In their reply, plaintiffs concede that all plaintiffs were "technically" given access to the hearing tapes relating to other plaintiffs, *Plaintiffs' Motion contra [sic] to Response in Opposition,* at p.2; they contend, however, that this opportunity was insufficient. Citing F.R. Civ. P. 5(a),[2] plaintiffs also contend that, because each plaintiff was provided a copy of the tape relating to his own hearing or hearings, all plaintiffs are entitled to such copies.

Having reviewed the parties' memoranda, the Court concludes that the opportunity provided to the plaintiffs to listen to the tapes of each proceeding was sufficient, with the exception of plaintiff Blankenship, who was apparently not provided a tape player on which to play the tapes. *See Plaintiffs' Reply,* Doc. No. 91, at p.3. Defendants are therefore **DIRECTED** to provide to plaintiff Blankenship, within twenty (20) days, the opportunity to listen to the RIB tapes produced to other plaintiffs.

However, the Court concludes that defendants need not supply additional copies of tapes to the remaining plaintiffs. In responding to plaintiffs' request for production of documents, including audio tapes, the defendants were not obligated to provide a copy of tapes to any plaintiff, but were obligated only to "produce and permit the party making the request ... to inspect and copy. ..." F.R. Civ. P. 34(a).

---

[2]"Except as otherwise provided in these rules, ... every paper relating to discovery required to be served upon a party ... shall be served upon each of the parties." F.R. Civ. P. 5(a).

3

The fact that defendants exceeded their obligations under Rule 34 will not result in the imposition of even greater burdens on them.

        b.    Documents relating to Asatru religion.

Plaintiffs sought production of all documents relating to the Asatru religion, to which at least some of the plaintiffs claim adherence. Defendants produced certain documents responsive to that request. Plaintiffs complain that defendants failed to produce inmate letters referring to the religion, documents relating to the parties to a separate action pending in this Court, *Miller v. Wilkinson,* C-2-98-275, and other miscellaneous documents. Defendants concede that certain documents have not yet been located. As to those documents, defendants are **ORDERED** to affirmatively search for such documents and, as to those documents not located by that renewed search, to provide, within twenty (20) days, a written explanation of the efforts taken to locate them. As to the remaining documents, defendants argue that further response to this request will pose undue burden on them, especially as to those documents available from counsel in *Miller*.[3] This Court agrees that further response to these discovery requests are unnecessary.

        c.    ODRC Policy No. 310-12, regarding security threat groups and investigatory information from plaintiffs' security threat group files.

Plaintiffs seek production of documents regarding security threat groups generally and investigatory files relating to each plaintiff and

---

[3] At least one of the plaintiffs in this action is apparently also a plaintiff in *Miller.*

4

at least another inmate in particular.  Defendants object to the request, contending that production of documents relating to prison security and prison gangs jeopardizes the institution's and department's interests in security.

It is unclear to the Court whether ODRC Policy No. 310-12 is already available to the public and, presumably, to the plaintiffs.  If so, it is unlikely that its production to the plaintiffs will pose additional threats to prison security.  Defendants are **ORDERED** to provide, within twenty (20) days, a written explanation of the basis for this objection to production of the policy.

However, the Court agrees that production of the investigatory information and files would pose a security risk that justifies withholding such documents from the discovery process.


d. Plaintiff Blankenship's mental health records.

Among the claims asserted in this action is plaintiff Blankenship's claim that he was denied mental health treatment during the course of his numerous "death fasts."  In connection with that claim, this plaintiff sought production of his mental health records.  The defendants represent that those documents were produced to him, *Exhibit L*, attached to *Defendants' Memorandum contra Third Motion to Compel,* but this plaintiff insists that he has not received them.

Defendants are **ORDERED** to reproduce, within twenty (20) days, plaintiff Blankenship's mental health records to him.


*Plaintiff Blankenship's Motion to Compel Discovery from Non-Parties,* Doc. No. 84.

Plaintiff Blankenship has propounded requests for production of documents to individuals associated with the Ohio Department of Rehabilitation and Correction but who are not named as defendants in this action. Those individuals have made no response to either the production request or to the motion.

Requests for production of documents may be made upon individuals who are not parties to an action "as provided in Rule 45." F.R. Civ. P. 34(c). Rule 45, of course, addresses subpoenas issued to non-parties. Because plaintiff Blankenship has not demonstrated that he has complied with F.R. Civ. P. 45 in making this discovery request of non-parties, his motion to compel, Doc. No. 84, is **DENIED**.

*Plaintiff Blankenship's Motion for Protective Order,* Doc. No. 87.

Defendant Wilkinson has propounded interrogatories and requests for production of documents to plaintiff Blankenship, who objects to certain requests on the basis that all such documents have either been referred to in the original complaint or can also be found in the possession of this defendant. Moreover, this plaintiff complains that he may not possess a complete set of the requested documents.

The requested discovery is relevant to the claims and defenses asserted in this case and defendants are entitled to learn what documents are in plaintiffs' possession. Moreover, a party is obligated to produce only those documents that "are in the possession, custody or control of the party upon whom the request is served. ..." *See* F.R. Civ. P. 34(a). Thus, the fact that this plaintiff may not possess all requested documents will not relieve him of the obligation of producing those

6

actually within his possession control. Plaintiff Blankenship's motion for a protective order, Doc. No. 87, is therefore **DENIED**.

<u>*Plaintiff Weisheit's Motion to Compel Discovery Relating to his Assignment to a Substance Abuse Program*</u>*,* Doc. No. 90.

Among the claims asserted in this action is the claim by plaintiff Weisheit that he was required to attend a substance abuse program that invokes a concept of God, in violation of his right to the free exercise of religion under the First and Fourteenth Amendments. He requested that defendant Wilkinson produce all materials used in that program. Defendant Wilkinson objected, taking the position that the discovery request falls outside the ambit of discoverable information and is in any event unduly burdensome because full compliance would require production of more than 100 video tapes as well as written material. Exhibit A, *Affidavit of Doug McDaniel,* ¶6, attached to *Response in Opposition to Plaintiff Weisheit's Motion for Order Compelling Discovery,* Doc. No. 96.

This Court agrees that the production request is relevant to this plaintiff's claim that his mandated participation in this substance abuse treatment program violated his rights under the First and Fourteenth Amendments. Moreover, the Court concludes that the production request is not unreasonably burdensome: Rule 34 does not require a party to provide actual copies of requested documents, but only to produce those documents for inspection and copying. Under these circumstances, plaintiff Weisheit's motion to compel this discovery, Doc. No. 90, is **GRANTED**. Defendant Wilkinson is **ORDERED** to produce, within twenty (20) days, the requested documents for plaintiff Weisheit's inspection and copying.

*Plaintiffs' Motion to Compel,* Doc. No. 143.

In this motion, plaintiffs renew certain discovery issues raised in earlier motions and which are addressed *supra.* Plaintiffs also complain that, notwithstanding this Court's order that defendants produce all of plaintiffs' grievance files from the Warren Correctional Institution, *see Opinion and Order,* (August 17, 2005), Doc. No. 129, defendants have not done so. In response, defendants represent that they have complied with this Court's order by producing grievance files from 2002 and 2003, arguing that those are the only files that plaintiffs need.

To the contrary, some of plaintiffs' claims asserted in this action arose in 2001. In any event, the Court's order, Doc. No. 129, expressly directed defendants to produce "all informal complaints, responses to informal complaints, grievances, disposition of grievances, grievance appeals and disposition of grievance appeals initiated by each plaintiff while they were incarcerated at the Warren Correctional Institution." Doc. No. 129, at p.2. To the extent that defendants have not done so, defendants are **ORDERED** to fully and scrupulously comply with that discovery request within twenty (20) days of the date of this order.

## ANTHONY LAWSON'S MOTION FOR LEAVE TO FILE *AMICUS* BRIEF, DOC. 135

A state inmate not named as a plaintiff in this action, Anthony Lawson, seeks leave to file an *amicus* brief on plaintiffs' behalf and in opposition to defendants' motion for summary judgment. Doc. No. 135. The brief tendered by Mr. Lawson appears to be a memorandum of law, which does not, the opinion of this Court, either advance plaintiffs' claims

8

or effectively challenge defendants' defenses. Accordingly, his motion for leave to file an *amicus* brief, Doc. No. 135, is **DENIED**.

### **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DOC. NO. 99**

Exhaustion.[4]

The Prison Litigation Reform Act ["PLRA"] requires that, prior to the commencement of a prisoner action under federal law and arising out of prison conditions, the prisoner must exhaust all "administrative remedies as are available." 42 U.S.C. §1997e(a). In the Sixth Circuit, inmates must "allege and show that they have exhausted all available state administrative remedies." *Brown v. Toombs,* 139 F.3d 1102, 1104 (1998). Defendants contend that most of the plaintiffs' retaliation claims, the free exercise of religion claims asserted by plaintiffs Weisheit and Blankenship, and plaintiffs' challenge to the constitutionality of ODRC Policy No. 302-02 relating to unauthorized group activity have not been appropriately exhausted. As a result, defendants argue, the entire action must be dismissed. *See Bey v. Johnson,* 407 F.3d 801 (6th Cir. 2005)(the PLRA requires "total exhaustion").

Most of the claims asserted in this action arise out of certain RIB proceedings instituted against plaintiffs from which plaintiffs apparently pursued all appropriate appeals. In their original complaint, plaintiffs alleged that their claims had been fully exhausted.

---

[4] Defendants also present similar exhaustion arguments in some of their responses to plaintiffs' various discovery motions and in their request, made in Doc. No. 93, to dismiss the religion claims asserted by plaintiffs Blankenship and Weisheit.

*Complaint,* at pp. 7-10.  In their third amended complaint, plaintiffs assert retaliation claims "implied" in the original complaint, Doc. No. 14, arguing that all the misconduct alleged in the original complaint was committed in retaliation "for exercising [plaintiffs'] constitutional rights and/or because plaintiffs refused to compromise their religion or free speech or political affiliation rights." *Motion for Leave to File a Third Amended Complaint,* ¶5, Doc. No. 14.  In the motion for summary judgment, defendants take the position that, in order to exhaust these retaliation claims, plaintiffs should also have presented the claims to prison officials through the prison grievance procedures, Ohio Admin. Code §5120-9-31; merely pursuing appeals from the RIB convictions was not, defendants contend, sufficient.

Plaintiffs insist that their claims of retaliation in the institution of RIB proceedings were properly brought to the attention of prison officials during the course of the appeals in those RIB proceedings.  For example, in his appeal from the RIB proceeding of July 12, 2002, plaintiff Weisheit complained as follows:

> The conviction and sentence of the Rules Infraction Board is invalid and cannot stand under the First and Fourteenth Amendments of the United States Constitution as I was singled out to be prosecuted differently than other inmates similarly situated based upon my religious beliefs, constituting unlawful selective enforcement and religious discrimination.

*Exhibit A,* attached to *Plaintiff Weisheit's Reply in Support of Motion to Compel Discovery,* Doc. No. 101.  Moreover, each plaintiff has submitted a sworn declaration that he was directed to not pursue grievances regarding matters relating to RIB proceedings. *Exhibits N-S*, attached to *Plaintiffs' Supplement to Plaintiffs' Opposition to*

10

*Defendants' Motion for Summary Judgment,* Doc. No. 106. Had they done so, plaintiffs contend, they could have been subjected to further disciplinary proceedings for failure to obey a direct order. Finally, plaintiffs note that they have not yet received all discovery relating to grievances filed by them.

In light of the uncertain state of the record as it relates to exhaustion and defendants' responses to plaintiffs' discovery requests in that regard, the Court concludes that summary judgment based a failure to exhaust appropriate administrative remedies is at present unwarranted.[5] *See* F.R. Civ. P. 56(f).

<u>Challenge to unauthorized group activity policy</u>.

Plaintiffs contend that the "unauthorized group activity" regulations and policies applied to them are unconstitutional. The United States Supreme Court has expressed its intention to revisit the issue of prison regulations that allegedly infringe prisoners' First Amendment rights. *Beard v. Banks,* 126 S.Ct. 650 (2005). This Court concludes that consideration of the merits of plaintiffs' constitutional challenge to the defendants' unauthorized group activity regulations and policies should await the decision of the United States Supreme Court in *Beard*. Defendants' motion for summary judgment, as it relates to this issue, will therefore be denied without prejudice to renewal.

<u>Retaliation claims</u>.

---

[5] Should defendants renew their motion for summary judgment on the basis of exhaustion, the Court will expect all parties to clearly address the evidence of exhaustion or non-exhaustion on a claim-by-claim basis.

11

Although the defendants concede that state officials may not retaliate against individuals who have engaged in constitutionally protected activities or conduct, *Thaddeus-X v. Blatter,* 175 F.3d 378 (6th Cir. 1999), they contend that plaintiffs have failed to establish that they were in fact engaged in constitutionally protected conduct and that, in any event, because plaintiffs violated legitimate prison regulations, their retaliation claim cannot proceed.

Many of plaintiffs' claims arise out of disciplinary proceedings instituted against them for having engaged in "unauthorized group activity." However, plaintiffs claim that prison regulations and policies prohibiting "unauthorized group activity" are unconstitutionally vague and overbroad and that those regulations and policies were selectively enforced against certain inmates in violation of their First Amendment rights. *Complaint,* at ¶¶7,30,35. Because the issue of the constitutional validity of these regulations and policies remains for resolution, *see supra,* the Court concludes that resolution of plaintiffs' retaliation claims must likewise await further development of the record.

Plaintiff Eberle's claim for emotional distress.

In the original complaint, and incorporated into the third amended complaint, plaintiff Eberle asserts a claim for mental and emotional distress. *Complaint,* at ¶10. Defendants move to dismiss that claim because the PLRA prohibits an action by a prisoner "for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. §1997e(e). Because this plaintiff fails to allege physical injury, defendants argue, he has no claim for emotional injury.

12

To the extent that plaintiff Eberle seeks to assert a separate claim based upon emotional damage and mental injury, the Court agrees that, in the absence of evidence of physical injury, the claim must be dismissed. Plaintiff Eberle may, however, continue to pursue his claims for alleged violation of his constitutional rights. Should he prevail on those claims, he may pursue an award of nominal, compensatory or punitive damages. *See Williams v. Ollis,* 2000 WL 1434459 at *2 (6th Cir. Sept. 18, 2000) (unpublished); *see also Meade v. Plummer,* 344 F.Supp. 2d 569 (E.D. Mich. 2004).

Religion claims of plaintiff's Blankenship and Weisheit.

Defendants also contend that the religious claims asserted by plaintiffs Blankenship and Weisheit should be dismissed. Defendants argue that the Asatru faith, to which plaintiff Blankenship claims adherence, does not require particular daily or weekly observances or prohibitions from work; defendants also argue that plaintiff Weisheit has not established his adherence to any religious beliefs offended by the substance abuse program.

The United States Supreme Court has held that inmates retain First Amendment rights, *see Pell v. Procunier,* 417 U.S. 817, 822 (1974), including the right to the free exercise of religion. *See Cruz v. Beto,* 405 U.S. 319, 322 n.2 (1972). An inmate alleging that prison officials have violated his religious beliefs must establish that "the belief or practice asserted is religious in the person's own scheme of things" and is "sincerely held." *Kent v. Johnson,* 821 F.2d 1220, 1224 (6th Cir. 1987). *See also Frazee v. Illinois Dept. of Employment Security,* 489 U.S. 829, 834 (1989)("Undoubtedly, membership in an organized religious

denomination, especially one with a specific tenet forbidding members to work ..., would simplify the problem of identifying sincerely held religious beliefs, but we reject the notion that in claiming the protection of the Free Exercise Clause one must be responding to the commands of a particular religious organization.") Plaintiff Blankenship has claimed, under penalty of perjury, *Complaint,* that his religious beliefs and practices require that he not work on certain days and at certain times and that the denial of his requested accommodation contravened his sincerely held religious beliefs. This Court concludes that there exists a genuine issue of material fact as to this issue and that summary judgment on this claim is unwarranted.

The Court likewise concludes that summary judgment is unwarranted as to plaintiff Weisheit's religion claim. Although defendants contend that plaintiff Weisheit was not required to participate in the challenged program, this plaintiff has offered evidence to the contrary. *Exhibit P,* attached to *Plaintiff Weisheit's Supplemental Opposition to Motion for Summary Judgment,* Doc. No. 115.

Coercive methods to forcefully expose inmates to religious doctrines have been held to violate the establishment and free exercise clauses of the First Amendment. *See, e.g., Campbell v. Cauthron,* 623 F.2d 503, 509 (8th Cir. 1980). However, because the record is not sufficiently developed as to the nature and content of the substance abuse treatment program that may have been required of plaintiff Weisheit, the Court concludes that summary judgment on this claim is also unwarranted at this juncture.

Defendants also contend that they are entitled to qualified immunity with respect to the religion claims of plaintiffs Blankenship and

14

Weisheit. The doctrine of qualified immunity shields governmental officials exercising discretionary functions from liability for monetary damages under 42 U.S.C. §1983 so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 806, 818 (1982). *See also Anderson v. Creighton,* 483 U.S. 635, 640 (1987). In determining whether state officials are cloaked with the defense of qualified immunity, the Court must determine, by reference to decisions of the United States Supreme Court, of the United States Court of Appeals for the Sixth Circuit, or of other relevant District Courts, whether or not the specific claim asserted against them was clearly established. *See Ohio Civil Services Employees Ass'n v. Seiter,* 858 F.2d 1171, 1177 (6th Cir. 1988). Once the defense of qualified immunity is raised, the burden falls upon the plaintiff to demonstrate that the law governing the claim was in fact clearly established. *Id.,* at 1174. If the plaintiff fails in his burden, the Court must conclude that, as a matter of law, defendants are immune from liability for monetary damages. *Windsor v. The Tennessean,* 719 F.2d 155, 165 (6th Cir. 1983), *cert. denied,* 469 U.S. 826 (1984).

The Court concludes that the record in this action is simply insufficiently developed for a meaningful evaluation of defendants' qualified immunity defense. As it relates to this issue, the motion for summary judgment is at this juncture without merit.

<u>Plaintiff Blankenship's claim of denial of mental health treatment</u>.

Plaintiff Blankenship asserts a claim under the Eighth and Fourteenth Amendments that he was denied mental health treatment by

15

defendant Washington in connection with certain "death fasts" pursued by this plaintiff. *Complaint,* at ¶89-91. The Eighth and Fourteenth Amendments to the United States Constitution proscribe "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Constitution does not, however, prohibit medical malpractice within the prison context. *Id.; Wester v. Jones*, 554 F.2d 1285, 1286 (4th Cir. 1977); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1081 (3d Cir. 1976).

In his affidavit, defendant Washington documents that plaintiff Blankenship was provided, either personally by defendant Washington or through his staff, mental health treatment beginning in May 2002. *Affidavit of Dr. Ken Washington* and attached documentation*, Exhibit AF,* attached to *Motion for Summary Judgment,* Doc. No. 99. Plaintiff alleges, however, that he embarked on his first "death fast" in January 2002. *Complaint,* ¶54.

In light of this issue of fact, and because, as noted *supra,* plaintiff Blankenship has apparently not yet received his mental health records, the Court concludes that summary judgment on this claim is unwarranted at this juncture.[6]

Eleventh Amendment immunity.

Finally, the Court agrees that, to the extent that plaintiffs assert claims under 42 U.S.C. §1983 for monetary damages from the defendants in

---

[6] The Court is not persuaded by plaintiff Blankenship's argument that, merely because a departmental policy may require the presence of a "mental health manager," defendant Washington -- rather than otherwise qualified psychological assistants -- was the only mental health expert able *as a constitutional matter* to provide necessary treatment.

16

their official capacities, the Eleventh Amendment to the United States Constitution precludes such claims. *See Will v. Michigan Dept. of State Police,* 491 U.S. 58-65 (1989) (Eleventh Amendment bars suits under §1983 against the state unless the state expressly waives its immunity); *Brandon v. Holt,* 469 U.S. 464, 471 (1985) (a claim against a governmental employee in his official capacity is in actuality a claim against the government for whom he works). However, some courts have held that a state's acceptance of federal funds constitutes a waiver of Eleventh Amendment immunity from a claim under RLUIPA. *Benning v. Georgia,* 391 F.3d 1299, 1305-06 (11th Cir. 2004); *Madison v. Riter,* 411 F.Supp. 645, 655-56 (W.Va. 2006).

To summarize, Doc. No. 90 is **GRANTED**. Doc. Nos. 81, 84, 87, 89, 93 and 135 are **DENIED**. Doc. Nos. 83, 99 and 143 are **GRANTED in part** and **DENIED in part** consistent with the *Opinion and Order.* To the extent that defendants' motion for summary judgment, Doc. No. 99, is denied, that denial is without prejudice to renewal upon the completion of discovery.


<u>March 31, 2006</u>                            *s/Norah McCann King*
                                          Norah McCann King
                                    United States Magistrate Judge