IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JEFFREY EBERLE,** *et al.*,

    **Plaintiffs,**

    v.                                Case No. 2:03-CV-272
                                            MAGISTRATE JUDGE KING

**REGINALD WILKINSON,** *et al.*,

    **Defendants.**

## OPINION AND ORDER

This matter is before the Court, with consent of the parties pursuant to 28 U.S.C. § 636(c), for consideration of Defendants' *Motion for Summary Judgment* on the claim of selective prosecution asserted by Plaintiffs Eberle, Mann and Swint. Doc. No. 449. For the reasons that follow, the motion is granted. Plaintiffs' *Motion for an Extension of Time*, Doc. No. 451, is denied.

### I.

Plaintiffs Eberle, Mann and Swint [collectively, "Plaintiffs"], along with three other state prisoners, commenced this action pursuant to 42 U.S.C. § 1983 challenging certain events that occurred during their incarceration. Plaintiffs asserted claims arising out of disciplinary proceedings charging them with "unauthorized group activity" on the recreation yard of the Warren Correctional Institution on August 15, 2002. Plaintiffs, who each have a tattoo

associated with white supremacist groups,[1] claimed that they were "arrested" and placed in segregation in violation of their constitutional rights.  *Complaint*, Doc. No. 1, at ¶ 1-2.

Prison officials observed Plaintiffs, and other inmates, gathered in the recreation yard.  Plaintiff Eberle admits that, at the time, he was packaging commissary items on the recreation yard for delivery to inmates in segregation.  *See Deposition of Jeffrey Eberle*, Doc. No. 338, at 17-18.  Plaintiffs Mann and Swint observed Plaintiff Eberle packaging and labeling the commissary items.  *Deposition of Brian Mann*, Doc. No. 339, at 39-41; *Deposition of David Swint*, Doc. No. 340, at 27-29; 33-34.  After a shake down on the recreation yard, prison officials found the following illegal items: tobacco, commissary items, and a tattoo gun and patterns.  Exhibit A attached to *Defendants' Motion for Summary Judgment*, Doc. No. 344.

Inmates are not permitted to bring commissary items to the recreation yeard and inmates in segregation are not permitted to possess or receive commissary items.  *See Opinion and Order*, Doc. No. 431, at 6, citing *Affidavit of Mark Stegemoller*, Doc. No. 346, ¶¶ 4-5.  Plaintiffs were charged with "unauthorized group activity," a violation of Class II, Rule 31; Plaintiff Eberle was also charged with possession of contraband.

Plaintiffs appeared before the Rules Infraction Board ["RIB"] for separate hearings on the charges.  Plaintiffs Mann and Swint were found guilty, but their convictions were reversed on appeal with the observation that "having a tattoo identified with a STG affiliation does not constitute a rule infraction."  Exhibit A attached to *Defendants' Motion for Summary Judgment*, Doc. No. 344.  Plaintiff Eberle, however, was found guilty of "unauthorized group activity" and

---

[1]Plaintiff Swint's tattoo consisted of a "bulldog that states (100% Honky) [with] lightning bolts on the outside."  Exhibit A attached to *Defendants' Motion for Summary Judgment*, Doc. No. 344.  Plaintiffs Eberle and Mann have a tattoo resembling a University of Cincinnati "bear claw" with swastika markings.  *Id.*  Prison officials associate these tattoos with white supremacist groups.  *Id.*

of possession of contraband and that decision was affirmed on appeal. *Id.*

In addressing an earlier *Motion for Summary Judgment*, Doc. No. 344, this Court concluded that the disciplinary proceedings did not contravene Plaintiffs' First Amendment rights. *Opinion and Order*, Doc. No. 431, at 5-7. The Court further concluded that Defendants were entitled to summary judgment on Plaintiffs' claim of retaliation since "the conduct that led to Plaintiffs' being placed in segregation was not constitutionally protected conduct." *Id.* at 7. Accordingly, the Court granted Defendants' *Motion for Summary Judgment*, Doc. No. 344.

Following that decision, Plaintiff Eberle noted that the Court had not addressed a claim of "selective prosecution" and "disparate treatment" in violation of the Fourteenth Amendment. *Motion for Clarification*, Doc. No. 436.[2] Because the record lacked clarity with respect to the nature of such a claim, the Court afforded to Defendants the opportunity to expressly address a claim of selective enforcement. *Opinion and Order*, Doc. No. 439, at 3.

Defendants have now filed a *Motion for Summary Judgment* on that claim. Plaintiffs have filed a *Memorandum contra* the motion, Doc. No. 450, but have also filed a *Motion for an Extension of Time* to further respond in opposition to the motion. Doc. No. 451. Before considering the merits of the Defendants' motion, the Court will address Plaintiffs' motion.

Plaintiffs seek an extension of time to further respond to the current *Motion for Summary Judgment* in order to allow fellow Plaintiff Darryl Blankenship an opportunity to review Defendants' motion and to assist Plaintiffs with that further response. According to Plaintiffs, as of February 9, 2011, Plaintiff Blankenship had not received a copy of Defendants' motion, which

---

[2]In opposition to Defendants' *Motion for Summary Judgment*, Plaintiffs had indeed argued that the regulation prohibiting "unauthorized group activity" had been selectively enforced. *See Memorandum contra*, Doc. No. 351, at 5-6. Plaintiffs did not address this claim in depth, however, since "Defendants have not moved for summary judgment on that claim . . . ." *Id.* at 6.

addresses only Plaintiffs' selective enforcement claims. *See* Doc. No. 451, at 2.

The Court declines to allow more time for further response in opposition to Defendants' pending motion. Although a co-plaintiff in this case, Plaintiff Blankenship had no involvement with the circumstances giving rise to Plaintiffs' claim. Plaintiffs have made a substantive response in opposition to Defendants' motion and they do not explain what additional information or argument might be available to them that was not presented in their response. The motion for an extension of time is therefore denied.

## II.

The standard for summary judgment is well established. This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). In making this determination, the evidence "must be viewed in the light most favorable" to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, summary judgment is appropriate if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "mere existence of a scintilla of evidence in support of the [opposing party's] position will be insufficient; there must be

evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). "Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### III.

As the United States Court of Appeals for the Sixth Circuit has explained, "[s]ometimes, the enforcement of an otherwise valid law can be a means of violating constitutional rights by invidious discrimination. To address this problem, courts have developed the doctrine of selective enforcement." *Futernick v. Sumpter Township*, 78 F.3d 1051, 1056 (6th Cir. 1996). A claim of selective enforcement is judged according to ordinary Equal Protection standards. *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). This requires that the plaintiff "show both a discriminatory purpose and a discriminatory effect." *Id.* As the Sixth Circuit has observed, selective enforcement ordinarily arises as a defense to a criminal prosecution. *Id.* at 318-19. Liability under 42 U.S.C. § 1983 can be established,

5

however, upon a showing of purposeful discrimination, *i.e.*, if based upon "an unjustifiable standard such as race, religion, or other arbitrary classification." *Id.* at 319, quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962).

In order to establish a claim of selective enforcement, three essential elements must be established:

> First, [an official] must single out a person belonging to an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations. Second, [the official] must initiate the prosecution with a discriminatory purpose. Finally, the prosecution must have a discriminatory effect on the group which the defendant belongs to.

*Id.* at 319, quoting *United States v. Anderson*, 923 F.2d 450, 453 (6th Cir. 1991). As to the first element, "'it is an absolute requirement that the plaintiff make at least a *prima facie* showing that similarly situated persons outside [the] protected category were not prosecuted.'" *Id.,* quoting *Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997). "[T]here is a strong presumption that the state actors have properly discharged their official duties, and to overcome that presumption the plaintiff must present clear evidence to the contrary. . . ." *Stemler*, 126 F.3d at 873.

As indicated above, Plaintiffs allege in the *Complaint* that they were subjected to disciplinary proceedings on account of their religious and political beliefs as revealed through their tattoos. They contend that other inmates who do not have similar tattoos are not prosecuted for gathering on the recreation yard. Plaintiffs specifically allege that black inmates routinely gather to sing but are not charged with rule violations. *Complaint*, Doc. No. 1, at ¶¶ 17-18; *see also Memorandum contra*, Doc. No. 450, at 3-4.

In the Court's view, these allegations fall far short of demonstrating or supporting

selective enforcement or prosecution in violation of equal protection. There is simply no evidence in the record that prison officials singled out Plaintiffs for enforcement of a rule violation while at the same time deciding not to discipline persons without the tattoo for similar misconduct. As this Court observed in its earlier decision, it is clear that Plaintiffs and other inmates were gathered in the recreation yard while Plaintiff Eberle was packaging and labeling contraband for delivery to inmates in segregation. Such conduct – which violates prison regulations – is not constitutionally protected. Although Plaintiffs may have worn similar tattoos, there is no evidence that their tattoos formed the basis for the disciplinary proceedings. Rather, the record establishes that it was the entire context of the events, including the possession of items of contraband and the preparation of those items for delivery to inmates in segregation, that was of concern to prison officials and which precipitated the disciplinary proceedings. Indeed, there is no suggestion by Plaintiffs that, had they gathered to sing in the recreation yard, they would have been charged with a rule infraction, notwithstanding their similar tattoos.

Plaintiffs have failed to come forward with evidence that prison officials chose not to prosecute inmates of other racial, religious or political backgrounds engaged in similar misconduct. The record simply contains no evidence that prison officials acted with an unlawful discriminatory purpose or effect in charging Plaintiffs with rule violations.

In short, the Court concludes that Defendants are entitled to summary judgment on this claim.

**IV.**

**WHEREUPON,** Plaintiffs' *Motion for an Extension of Time*, **Doc. No. 451**, is **DENIED**. Defendants' *Motion for Summary Judgment*, **Doc. No. 449**, is **GRANTED**. The claims of selective enforcement asserted by Plaintiffs Eberle, Mann and Swint are **DISMISSED.**

**April 21, 2011**             *s/ Norah McCann King*
**DATE**                **NORAH McCANN KING**
                **UNITED STATES MAGISTRATE JUDGE**